IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs May 18, 2010

## WAYNE LYDELL HOLT v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Davidson County**
**No. 99-B-803    J. Randall Wyatt, Jr., Judge**

_____

**No. M2009-00933-CCA-R3-PC - Filed July 22, 2010**

_____

Petitioner, Wayne L. Holt, was indicted by the Davidson County Grand Jury for one count of first degree felony murder, one count of premeditated first degree murder, and one count of especially aggravated robbery. *State v. Wayne L. Holt*, No. M2001-00945-CCA-R3-CD, 2002 WL 31465263, at *1 (Tenn. Crim. App., at Nashville, Nov. 5, 2002), *perm. app. denied*, (Tenn. Feb. 24, 2003). At trial, a motion for judgment of acquittal was granted by the trial court as to the count of first degree felony murder and to the count of especially aggravated robbery. On the remaining charge of first degree murder, the jury convicted Petitioner of the lesser included offense of second degree murder. He received a thirty-year sentence. A direct appeal was unsuccessful. *Id.* Petitioner then sought post-conviction relief on the basis that, inter alia, he received ineffective assistance of counsel. After a hearing, the post-conviction court denied the petition for relief. After a thorough review on appeal, we determine Petitioner has failed to prove he received ineffective assistance of counsel. Accordingly, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed.**

JERRY L. SMITH, J., delivered the opinion of the court, in which DAVID H. WELLES and ROBERT W. WEDEMEYER, JJ., JOINED.

G. Kerry Haymaker, Nashville, Tennessee, for the appellant, Wayne Lydell Holt..

Robert E. Cooper, Jr., Attorney General and Reporter, David H. Findley, Assistant Attorney General; Victor S. Johnson, District Attorney General, and Amy Eisenbeck, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

## *Factual Background*

Petitioner was indicted by the Davidson County Grand Jury in April of 1999 for one count of first degree felony murder, one count of premeditated first degree murder, and one count of especially aggravated robbery. *Wayne L. Holt*, 2002 WL 31465263, at *1. After the trial court dismissed the count of first degree felony murder and the count of especially aggravated robbery, the jury convicted Petitioner on the remaining first degree murder count of the lesser included offense of second degree murder. *Id.* He received a thirty-year sentence. *Id.* On direct appeal, Petitioner argued: (1) the trial court erred in denying the pretrial motion to suppress Petitioner's statement; (2) the trial court erred in denying the motion for judgment of acquittal as to the count of premeditated first degree murder; (3) the trial court erred in overruling the objection to the State's closing argument; (4) the trial court erred in granting the request for a flight instruction; and (5) the verdict was against the weight of the evidence. *Id.*

This Court summarized the facts underlying the conviction on direct appeal as follows:

[Petitioner] was convicted for stabbing to death the victim inside the victim's home. At trial, [Petitioner] did not deny having stabbed the victim. Instead, he raised the affirmative defense of self-defense, claiming that the victim attacked him first with a knife and [Petitioner] protected himself with his own knife.

On the afternoon of January 29, 1999, [Petitioner] went to the rooming house in North Nashville where the victim, Calvin Johnson, lived. He came to the house looking for the victim, according to the testimony of Simone Tibbs, who also lived there with her husband Joseph and was present at the house that day. [Petitioner] and the victim talked for a while. Then [Petitioner] walked next door to the construction office, where the victim worked and asked the victim's brother, James, a supervisor, whether the victim was paid that day. The victim's brother replied that he had been paid, and [Petitioner] left without saying anything else. Mrs. Tibbs saw [Petitioner] come out of the construction office and walk back into the rooming house, and then leave several minutes later. James Johnson testified that shortly

afterwards, someone ran inside and said that [Petitioner] had stabbed the victim and to call the paramedics.

. . . .

Detective David Imhoff testified that he went to the hospital where the victim had been taken. He found a small paring knife on the table next to the gurney on which the deceased was lying. He talked to the paramedics and learned that the knife had been removed from the victim's back pocket.

LaShonda Stewart knows [Petitioner] and lived a couple of blocks from the victim at the time of the incident. She testified that [Petitioner] came to her house on the afternoon of January 29, 1999. She was standing on her porch. She testified that [Petitioner] said he needed to talk to her and that he had "f---ed somebody up." Stewart testified that [Petitioner] told her that he had stabbed the victim, pointing to his chest. She testified that [Petitioner] seemed to be confused and panicked, and she refused to let him come inside. Stewart watched [Petitioner] leave and saw him get into Joe Batts' car, which was parked on the corner.

Joseph Batts testified that he was driving in the neighborhood that afternoon, and he saw an ambulance sitting outside the apartment where the victim was stabbed. He drove a couple of blocks past and saw [Petitioner] and stopped. [Petitioner] asked him to give him a ride somewhere. They drove to the store, where [Petitioner] bought a beer, and then they drove to some nearby townhouses and sat in the parking lot and "smoked dope." Then, [Petitioner] asked Batts to drive him back to LaShonda Stewart's house. When they got close to her house, they saw that it was surrounded by police cars, and [Petitioner] told him to drive somewhere else. [Petitioner] asked Batts to drive him to East Nashville, where Batts dropped him off.

Rosaura DeRios testified that [Petitioner] arrived at her house in East Nashville on the evening of January 29, 1999. She testified that he stayed at her house for three days because she was ill and taking medication at the time, and therefore was unable to drive him home that same night.

*Id.* at *1-2. At a hearing on a motion to suppress Petitioner's statement that was held prior to trial, the following testimony was elicited:

Detective Gray testified that he became involved in the investigation when he was asked by homicide detectives to help in locating [Petitioner] because Detective Gray had known [Petitioner's] family for many years. He testified that he contacted [Petitioner's] family and advised them of a warrant for [Petitioner's] arrest. The following day, he received a call from [Petitioner's] family, advising him that [Petitioner] was in a particular location. Detective Gray went to the location, where he found [Petitioner] and told him that he had a warrant for his arrest. Detective Gray testified that [Petitioner] did not appear to be intoxicated or under the influence of any controlled substances. However, on cross-examination, he testified that the house in which he found [Petitioner] looked like a "crack house."

According to Detective Gray's testimony, he waited outside while [Petitioner] stayed inside the house for several minutes. He then went back inside to get [Petitioner], and they got in his police car to drive to the criminal justice center. Detective Gray testified that [Petitioner] began crying and talking about the incident for which he was being arrested. Detective Gray cautioned him that he did not have to say anything. [Petitioner] responded that he knew he did not have to talk, but he thought his life was over. [Petitioner] explained to Detective Gray that the victim had owed him fifty dollars, and when [Petitioner] approached the victim about the fifty dollars, the victim became belligerent and attacked him. [Petitioner] told Detective Gray that he was protecting himself. He also told him that after the incident, he put the knife with which the victim was killed in the back of a pickup truck. Detective Gray testified that he did not read [Petitioner] his *Miranda* warnings and did not ask him any questions concerning the incident.

Detective West, the lead detective in the investigation, also testified at the suppression hearing. He testified that on the same day Detective Gray located [Petitioner], he was contacted and told of [Petitioner's] arrest. He further testified that when he arrived at the police station to interview [Petitioner], he advised [Petitioner] of his rights and [Petitioner] signed a rights waiver form. Detective West testified that he assessed [Petitioner's] physical capabilities and determined that he was not too intoxicated, or otherwise under the influence, to give a statement. Detective West tape-recorded the statement, which he summarized for the trial court at the hearing. As Detective West remembered the statement, [Petitioner] went to the house where the victim lived to collect fifty dollars, which the victim owed [Petitioner]. The victim told [Petitioner] that he did not have the money, so [Petitioner] went next door to the construction company where the victim's

brother worked and asked if the victim had been paid that day, to which the victim's brother replied that he had. [Petitioner] went back over to the victim's house to confront him again, and the victim pulled out a knife. [Petitioner] pulled his knife and swung a couple of times and left, but [Petitioner] did not know if he had stabbed the victim or not.

[Petitioner] testified at the suppression hearing that he "got high" from around 1:30 a.m. until 10:30 a.m. the morning that Detective Gray arrested him. He testified that he smoked about a gram of cocaine and drank a half pint of vodka and a quart of beer. He also testified that Detective Gray waited while he went inside to do more drugs. After he got into the car, [Petitioner] testified that Detective Gray asked, "what happened, man?" With regard to the taped interview at the police station, [Petitioner] did not remember Detective West going over his rights with him before interviewing him. He admitted at the hearing, however, that the signature on the rights waiver form was his, but he did not remember signing it.

*Id.* at *3-4.

After the supreme court denied permission to appeal from this Court's decision on direct appeal, Petitioner filed a pro se petition for post-conviction relief. In that petition, Petitioner argued that: (1) the State allowed perjured testimony to go uncorrected; (2) the trial court improperly instructed the jury; (3) the trial court allowed a witness to appear in a jumpsuit; and (4) he received ineffective assistance of counsel at trial and on appeal. In an amended petition, Petitioner argued that trial counsel was ineffective for: (1) failing to object to the perjured testimony of witness Campbell; (2) failing to request a jury instruction on ignorance or mistake of fact; (3) failing to investigate Petitioner's ability to waive his rights to speak to police while under the influence of drugs and alcohol; (4) failing to object to statements made during closing argument by the State; (5) failing to seek an emergency appeal regarding the trial court's ruling on the questioning of a witness; and (6) failing to seek to introduce the taped statement of Petitioner into evidence. Petitioner also argued that the State's attorney committed prosecutorial misconduct during closing arguments.

The post-conviction court held a hearing on the petition for relief. At the hearing, Petitioner testified that he was under the influence of both drugs and alcohol when he gave his second statement to police. Petitioner claimed that he had consumed one gram of cocaine, a quart of beer, and a half pint of vodka. Petitioner also suggested that a detective allowed him to consume alcohol on his way to the police station after he was arrested. Petitioner remembered that his testimony at the suppression hearing supported this assertion. However, Petitioner admitted that everything in his statement was true.

-5-

Trial counsel also testified at the hearing. She had been practicing law for about eight years at the time of Petitioner's trial. Trial counsel recalled Supreme Court Rule 13 which would allow her to seek funds to hire an expert in preparation for Petitioner's trial. Trial counsel had no memory of having a discussion about seeking an expert toxicologist to testify regarding Petitioner's inebriation. Because she had no memory of any conversations about an expert, trial counsel could not say whether it was an oversight or a strategic decision. Trial counsel admitted that she was not "comfortable" in assuming it was a strategic move and opined that if she were to try Petitioner's case today, she would seek an expert.

Co-counsel also testified at the hearing. Co-counsel did not recall whether there were discussions about hiring an expert. Co-counsel testified that they should have tried to get an expert to testify concerning Petitioner's capacity to waive his rights in light of his intoxication. Co-counsel estimated that she spent approximately one hundred hours on Petitioner's case, separate and apart from the time that trial counsel spent on the case.

Post-conviction counsel attempted to secure funds for an expert at the post-conviction stage. Post-conviction counsel alleged that the expert could have testified to the effects of various drugs on an individual's ability to waive rights. The post-conviction court denied the motion.

At the conclusion of the post-conviction hearing, the post-conviction court took the matter under advisement. In a written order, the post-conviction court denied relief, addressing each of Petitioner's allegations. The post-conviction court determined that Petitioner's failure to raise the issue with regard to prosecutorial misconduct at trial waived the issue. Further, the post-conviction court determined that Petitioner failed to properly demonstrate his first allegation of ineffective assistance of counsel, specifically that trial counsel was ineffective for failing to object to perjured witness testimony, because Petitioner presented no evidence of the statement at the hearing.

Next, the post-conviction court determined that Petitioner failed to show that a mistake of fact instruction would have been warranted at trial, so trial counsel's failure to seek such an instruction was not ineffective. The post-conviction court determined that although trial counsel could not recall why an expert was not secured and that it was "possible that an expert witness could have provided a basis for granting the suppression motion," Petitioner failed to demonstrate "what, if any, medical testimony would have benefitted" the defense. Further, the post-conviction court opined that even if the statements had been suppressed, Petitioner failed to demonstrate a prejudicial effect because the "evidence presented at trial was overwhelmingly inculpatory."

The post-conviction court determined that the failure of trial counsel to object to statements made during closing argument was not ineffective, partially because the record indicated that trial counsel objected to some allegations during closing argument. These objections were overruled by the trial court and the trial court's decision was affirmed on appeal.

The post-conviction court found Petitioner's argument that trial counsel was ineffective for failing to seek an emergency appeal to be without merit because Petitioner failed to establish the grounds for an emergency appeal.

The post-conviction court accredited trial counsel's testimony with regard to the introduction of Petitioner's taped statement into evidence. Trial counsel felt that the introduction of the statement would have been detrimental to the defense. The post-conviction court determined that it was a strategic move by trial counsel that was not "below the range of competence."

The post-conviction court next determined that appellate counsel was not ineffective for failing to raise the issues asserted by Petitioner on direct appeal because the post-conviction court determined that the issues were without merit.

Finally, the post-conviction court chose not to address Petitioner's issue regarding whether the trial court erred in allowing a witness to testify in a prison jumpsuit due to Petitioner's failure to cite any authority to support his position.

Petitioner now seeks an appeal of the post-conviction court's denial of relief.

*Analysis*

*Post-conviction Standard of Review*

The post-conviction court's findings of fact are conclusive on appeal unless the evidence preponderates otherwise. *See State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999). During our review of the issues raised, we will afford those findings of fact the weight of a jury verdict, and this Court is bound by the post-conviction court's findings unless the evidence in the record preponderates against those findings. *See Henley v. State*, 960 S.W.2d 572, 578 (Tenn. 1997); *Alley v. State*, 958 S.W.2d 138, 147 (Tenn. Crim. App. 1997). This Court may not reweigh or re-evaluate the evidence, nor substitute its inferences for those drawn by the post-conviction court. *See State v. Honeycutt*, 54 S.W.3d 762, 766 (Tenn. 2001). However, the post-conviction court's conclusions of law are reviewed under a purely

de novo standard with no presumption of correctness. *See Shields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001).

*Ineffective Assistance of Counsel*

When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, the petitioner bears the burden of showing that (a) the services rendered by trial counsel were deficient and (b) that the deficient performance was prejudicial. *See Powers v. State*, 942 S.W.2d 551, 558 (Tenn. Crim. App. 1996). In order to demonstrate deficient performance, the petitioner must show that the services rendered or the advice given was below "the range of competence demanded of attorneys in criminal cases." *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). In order to demonstrate prejudice, the petitioner must show that there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. *See Strickland v. Washington*, 466 U.S. 668, 694 (1984). "Because a petitioner must establish both prongs of the test to prevail on a claim of ineffective assistance of counsel, failure to prove either deficient performance or resulting prejudice provides a sufficient basis to deny relief on the claim." *Henley v. State*, 960 S.W.2d 572, 580 (Tenn. 1997).

As noted above, this Court will afford the post-conviction court's factual findings a presumption of correctness, rendering them conclusive on appeal unless the record preponderates against the court's findings. *See id.* at 578. However, our supreme court has "determined that issues of deficient performance by counsel and possible prejudice to the defense are mixed questions of law and fact . . . ; thus, [appellate] review of [these issues] is de novo" with no presumption of correctness. *Burns*, 6 S.W.3d at 461.

Furthermore, on claims of ineffective assistance of counsel, the petitioner is not entitled to the benefit of hindsight. *See Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. 1994). This Court may not second-guess a reasonably-based trial strategy, and we cannot grant relief based on a sound, but unsuccessful, tactical decision made during the course of the proceedings. *See id.* However, such deference to the tactical decisions of counsel applies only if counsel makes those decisions after adequate preparation for the case. *See Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

On appeal, Petitioner raises two issues. He contends that trial counsel were ineffective because they did not secure funding for a toxicologist. He also contends that the post-conviction court erred by denying expert witness funds as the post-conviction level.

-8-

*Failure to Secure Expert Witness*

The proof at the post-conviction hearing indicated that trial counsel could not recall whether conversations were had about hiring an expert. Further, trial counsel admitted that if she were trying the case today, she would seek an expert. Co-counsel agreed. The post-conviction court determined that Petitioner failed to show that a toxicologist would have been helpful. Moreover, the proof of Petitioner's guilt even absent his statement is overwhelming. In other words, Petitioner was unable to show prejudice as a result of trial counsel's failure to secure an expert. The record supports the post-conviction court's determination. Petitioner in this case has failed to establish by clear and convincing evidence that he is entitled to post-conviction relief on the basis of ineffective assistance of counsel.

*Denial of Funds for Expert*

Petitioner also argues that the post-conviction court erred in denying the request for expert funds at the post-conviction level. As part of his argument, Petitioner "recognizes that the argument that is being made is contrary to case law and is contrary to the current state of the law in Tennessee." We determine that the post-conviction court properly denied relief. The Tennessee Supreme Court Rules clearly prohibit the authorization of expert services in non-capital post-conviction proceedings. Tenn. Sup. Ct. R. 13 § 5(a)(2); *see also* T.C.A. § 40-17-207; *Davis v. State*, 912 S.W.2d 689, 696-97 (Tenn. 1995). Further, Petitioner's argument, that despite well-settled law, a denial of expert funding denies him fundamental due process rights, has already been addressed by a panel of this Court. In *Asata Lowe v. State*, No. E2006-02028-CCA-R3-PC, 2008 WL 631169, at \*20-21 (Tenn. Crim. App., at Knoxville, Mar. 10, 2008), *perm. app. denied*, (Tenn. Aug. 25, 2008), this Court noted the prohibition for expert services in non-capital post-conviction proceedings and determined that for the Court to analyze the petitioner's claim, she "was required at a minimum to make a threshold showing that such an expert exists. This showing would demonstrate that the claim that an expert [would have helped the defense was] more than mere speculation. We cannot conclude that the Due Process Clause was violated based on mere conjecture." *Id.* at \*21. The same analysis applies herein. Other than statements of post-conviction counsel there is no proof in the record that any expert existed whose testimony would have corroborated Petitioner's claims. Accordingly, the post-conviction court properly denied the request for an expert.

*Conclusion*

For the foregoing reasons, the judgment of the post-conviction court is affirmed.


_____
JERRY L. SMITH, JUDGE